Case No. 17-3052 United States of America v. James Durrette, also known as Jay Durrette, also known as Ray Gregg's appellate. Mr. Cochran for the appellate, Ms. Annette for the appellate. Mr. Cochran, good morning. Good morning, Your Honor. May it please the Court. Judge Mehta gave four reasons for attributing 100 grams of heroin to Mr. Durrette in this case. They are set out on pages 332 to 335 of the appendix, and I've provided copies of them, of that appendix, to the Court and to counsel. I will address them in turn. First, according to Judge Mehta, the supposed 100 grams Lawson stashed at Durrette's car wash, plus the extra 50 grams of cutting agents, supposedly added by Lawson, together made 139 grams of mixture containing heroin. As Durrette has shown, we hope, that doesn't work based on the record. Something like 100 grams, I'm quoting the record here, is not proof beyond a reasonable doubt of 100 grams. And cut added not by Lawson, but by Weeks, who was an FBI cooperator, does not count as the amount involved in the conspiracy. Second, at page 333, lines 20 to 21, in a single sentence, the Court says the jury simply could have attributed the entire kilogram to Durrette. Based on the evidence here, that does not meet the reasonable doubt standard. The record shows the following. First, the June transaction was the first and only transaction in which Lawson conspired with Durrette to distribute heroin. Two, there was no evidence that Durrette actually knew anything about Lawson's additional 900 grams or any additional quantity of heroin. Three, all of the amounts of heroin weighed by the FBI in this case were less than 100 grams. But didn't Lawson give Durrette 100 grams to store in the car wash? He said, I think it was something like 100 grams or something. Something like 100 grams, I submit respectfully, Your Honor, is not proof beyond a reasonable doubt of 100 grams. So is that purely because he said something like, because suppose he said something like 150? That would have been helpful to get over 100 grams. Right. But is that really what it turns on, is that it's something like, and it happens to be right at the threshold? Because something like, I know your argument is that something like isn't exact, but it's, at what point do you get outside the range of something that the jury can rely on if you're in the vicinity anyway? Well, what if he said something like 101? I don't think that would make it. Right. Well, what he said was, I think I took off like 100 grams or something. And I think, I understand your question, but I'd say 150 at least. You think 150 is what, okay. Okay. And as I said, so the argument too, all the amounts weighed by the FBI in this case were less than 100 grams. So on this, on the theory that this is adequate, if Lawson had bought 10 tons of heroin from Fausto and Merceda unknown to Durrette, Durrette could have convicted a conspiring, could distribute 10 tons of heroin. You got to have some evidence in there that he has noticed some greater amount. And that I'd say was not true in this case. Also, it should be noted, the government never addresses this argument. In fact, it recognizes the argument and then specifically decides it isn't going to argue it. That is based on, he could, he could have, he could simply have attributed the entire, entire kilogram to a reason for seeing the, the, the, the kilogram, extra kilogram of heroin. Instead, let me just, just, just add a little bit to this. The Supreme Court ruled in Wood v. Milliard that the Tenth Circuit abused its discretion in ruling against Wood based on an argument that the government purposely decided to disregard. And that's the, that's the case here. The government purposely decided to disregard this basis for 100, for 100 grams of heroin. Instead of reasonable foreseeability, the government argues that juries could have found based on the evidence that Durrette had actual knowledge of the extra kilogram, extra, had actual knowledge of what Lawson had bought because Weeks knew about it. However, because two of your best friends and fellow dope dealers know that one of those two dope, one of those two friends has a kilogram of heroin, doesn't mean you know it beyond a reasonable doubt. So Weeks testified that Lawson and, and your client Durrette were, were good friends and they, they made purchases together, right? Say it again, Your Honor. Did Weeks testify that Lawson and your client Durrette were good friends and that they made purchases together? I thought he did. Yeah, I think he did. And so if that... I mean, there is evidence of that anyway in the record. Right. And so if, if we take your argument that like 100 doesn't quite, let's just suppose for argument purposes that we accept your submission that like 100 isn't enough to prove 100 beyond a reasonable doubt. But like 100 is something in the neighborhood of 100. And then if there's also testimony that says that they were good friends and they made purchases of drug together, drugs together, then it doesn't seem like you need all that much more to get you over 100. Let's see, where am I? Well, beyond a reasonable doubt, I guess my position has to be that it isn't. That would have to be your position. I guess I'm just, I'm just wondering why not? Well, it just seems to me, I mean, I, I think this is really kind of a, I mean, the argument that by itself, that just because you have, you have two good friends and you're, you guys have all done dope together and one of them has a kilogram of heroin, the idea that that means that you know that one of them has a kilogram of heroin is absurd. I mean, do you think dope dealers tell each other all the dope they've got? I mean, they're all crooks. No, I don't know that you'd attribute the entire amount. I guess what I'm saying is we know that there's evidence that it's somewhere in the neighborhood of 100. And your argument is, well, somewhere in the neighborhood of 100 isn't 100. And I guess what I'm saying is, but there's other evidence that ties Durrett to some quantity of drugs through his relationship with Lawson and through the testimony that Durrett and Lawson purchased drugs together. So if you're in the neighborhood of 100 and then you have other evidence that ties him to somebody with whom he's purchasing drugs together, as long as the jury thinks that's some non-trivial amount, then that could be enough, the government argument goes, I think, to allow a jury to find beyond a reasonable doubt that your client was involved with more than 100. Well, I hope not. Third, at page 334, lines 3 through 10, Judge Mehta states that the court's decision in law may not require that the drug quantity itself be reasonable foreseeable to the defendant. Quote, he says, it, quote, may only require that the government establish the acts and furtherance of the conspiracy be reasonably foreseeable to attribute the entire drug quantity to an individual co-conspirator. That is, again, if a defendant could have reasonably foreseen, again, on this theory, if the defendant could have reasonably foreseen that the person he bought the drugs from bought the drugs from someone else, whatever that amount was, then if, in this case, Lawson had bought 10 tons of heroin from Foster and would say that Durrett would have been responsible for 10 tons of heroin. Anyway, I don't think that's what law means. Attribution means not only a reasonable foreseeable quantity, conspiracy, but a quantity reasonable foreseeable to the defendant. And in law, when the court found that there was enough evidence of whatever, I think it was 50 grams in that case, they only dealt with stuff that law personally participated. In any event, if that's what law means, it was overruled by a stoddard. All right, fourth, and this is the tough one. The court rules that Lawson could have reasonably foreseen that the 100 grams he received from Lesson was part of a larger drug conspiracy because greater amounts had been involved in the April sales in which Lawson was not involved. But could he have done so beyond a reasonable doubt, given Durrett had no actual knowledge of the actual amount here? This was the first time he joined a heroin transaction with Lawson, and the amounts in question is weighed by the FBI, in this case, were less than 100 grams. To conclude, one, a case where the government has prevailed, given evidence this week, and purposeful failure to argue, but I haven't found one. And given that at least three of the grounds on the basis of which the district court ruled are, we respectfully submit deficient. Judge Mehta might well, on remand, come to a different conclusion if he had to rely only on the fourth of his four reasons. All right.  Thank you, Your Honor. Ms. Zellnick, good morning. Good morning. May it please the Court. Christina Amen on behalf of the United States. In this case, the evidence was sufficient to support the jury's finding and the trial court's finding that the conspiracy that Appellant was involved in involved 100 grams or more of heroin. And first I'd like to address the discussion of Mr. Lawson's testimony, because it is true that, as Appellant said here, Lawson does use the verbal tick, like, when he's discussing some of the drug quantities here. But if this Court reviews his entire testimony, he specifically does say, when asked on page 13 of the March 13 morning transcript, how much did you give to Appellant to store at the car wash? It says 100 grams, with no like there. So there are some likes, but there's one specific answer without a like. And, moreover, on cross-examination, when he's asked, so you're uncertain about how much you gave him, he says, no, I'm not uncertain. So I think, in the light most favorable to the government, I don't think that there's sufficient grounds to reverse this conviction and sentence based on the one word like that Lawson uses sometimes to describe this 100 grams. He says specifically that he gave 100 grams to Appellant to store for him at the car wash. And given the other testimony, that they were good friends and partners in the drug trade, that alone answers the question of whether 100 grams or more were involved. Turning to Appellant's other... a statement that had the word like in it, would you be making the argument that that's enough for a jury to find beyond a reasonable doubt that the amount was satisfied, even though it was by the witness's own testimony and approximation? Your Honor, I think that would be a more difficult case. But I think if you look at Lawson's entire testimony, he repeatedly uses that word. And I think it would be – and so the answer to the Court's question is, yes, I would, because it would be the same thing as if the Court said if he testified and repeatedly said um or you know. And I think that all three of you have seen enough people talking to you, using tics like um and you know and like, that that in and of itself doesn't cast doubt on what the remaining, what the next part of the answer is. And it seems as though even though he uses the word like, he does not equivocate on the amounts. And as I say, defense had the opportunity to ask him. And he said no. He was not uncertain about how much there was. And I think if anything, that overcomes the question of whether the like defeats the finding of 100 grams or more. Now if he said, instead of like, if he said about, then you couldn't say that like is a verbal tic? I think that would be a much more difficult question. But again, he didn't say that. He said like. And I think all of us have been on TV, movies, social media enough to know a lot of people say like when they don't mean to equivocate. But even if he had meant to equivocate, or even if that was a possibility, it's refuted by his later answer when he's definite and by his answer that he was not uncertain. And I think those two things can allay any question that the word like somehow defeats the jury's and the trial court's conclusion, having listened to this entire testimony, that 100 grams were left at that car wash to be stored. There are two other pathways that can be taken to also reach the conclusion of 100 grams or more. And as we say, the testimony of Lawson that he gave Appellant 100 grams or more to store resolves this. There's no more conclusion needed to be made. But the other alternative pathway that the court relied on was the idea that Appellant was also involved in the sale of half of that 100 grams that he took and sold along with Lawson to Weeks. All of those three of them agreed that there was going to be some chicanery involved in that sale, not with respect to what Lawson and Appellant were doing, but with respect to what Weeks was going to do to his downstream buyer. And so, therefore, they negotiated and participated in a videotape sale in which they talk about a 50 of heroin, and that was half of what that 100 grams. And the 50 was sold to Weeks along with the bag of cut in one bag for him to mix up. And we would submit that even though Weeks was the one who mixed it up with the ---- mixed the cut with that heroin, that the court can consider the fact that that was a mixture or a substance containing heroin that was 89 grams, and that combined with the 50 that was left back at the car wash exceeds 100 grams. So, again, that's another pathway, not quite as strong as the pathway where Lawson specifically says there were 100 there, but it is another way to get to 100 grams or more. And, finally, turning to the trial court's finding that it was supportable that Lawson or that Appellant could have known about the other 900 grams in the kilogram, that is also supportable by the record in this case. There was testimony that these two, that Appellant and Lawson, were partners, they were good friends, they had dealt drugs together for years, that Appellant had participated in his drug-dealing activities. And this isn't the type of thing that counsel was talking about during his argument where somehow Lawson just ends up with some heroin and says, oh, I have some heroin for you. This was something where Lawson actually stole the heroin from other co-conspirators from California and was willing to tell Weeks about it, who was a buyer who had a much less close relationship with him. And from that, in the light most favorable to the government, it is reasonable to infer that he might also have told Appellant that this 100 grams that he gave him to hide in the car wash had come from a shipment, a larger shipment of heroin that he had stolen from these California distributors. And with regard to counsel's question about, well, suppose there had been 10 tons in the shipment. There was no charge of 10 tons. There was no charge of 1,000 grams of heroin here. This was 100 grams or more. And so if all he had to do was say, I stole some heroin from this guy and I'm giving you part of it, this 100 grams, I'm giving you part of it, and that would also support the finding of 100 grams or more. So for those reasons, we would submit that the evidence here was more than sufficient to support the trial court's conclusion that, supporting the jury's finding that 100 grams or more was involved in this conspiracy and that Appellant's sentence was lawful. If there are no further questions, we would ask that the judgment of the district court be affirmed. All right. Thank you. Does Mr. Corcoran have any time? Okay. Why don't you take a minute? First of all, as to the testimony about 100 grams, what he actually said was, and this is the most detailed answer he gave, the most detailed answer. He said, quote, I think I took off like 100 grams or something. That's at the joint appendix, page 295. And my second point, and I hope I won't exceed 100. Is that the same as page 13 of the transcript? What you just read, is that? It's a joint appendix 295. Okay. Do you know if that's page 13 of the transcript, if that's the same? I don't know, actually. Okay. And then my second point is simply that I note that here the government in the Court of Appeals has also passed up on the two arguments that Judge Mehta relied on, his second and fourth arguments. And so the government is now stuck with the first argument and the argument that the two, just because you have two friends who have a kilogram of heroin, you know about it. Thanks very much. All right. Mr. Corcoran, you were appointed by the Court to represent your client, and we thank you for your able assistance. Thank you, Your Honor.
judges: Henderson, Srinivasan, Edwards